# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JOSEPH TROTTIER, *et al.*, individually and on behalf of all others similarly situated, | **Case No. 4:23-cv-01818** |
| Plaintiffs, | **4:23-cv-01831** |
| | **4:23-cv-01845** |
| v. | **4:23-cv-02388** |
| | **4:23-cv-02547** |
| SYSCO CORPORATION, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

**Page**

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS................. 1

II.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ............................... 3

III.    SUMMARY OF ARGUMENT ...................................................................................... 3

IV.     INCORPORATION BY REFERENCE ......................................................................... 4

V.      SUMMARY OF SETTLEMENT TERMS..................................................................... 4

      1.   Settlement Benefits ........................................................................................ 4

      2.   Monetary Relief ............................................................................................. 5

      3.   Business Practice Commitments..................................................................... 6

      4.   Release ........................................................................................................... 6

VI.     LEGAL STANDARD.................................................................................................... 6

VII.    ARGUMENT ................................................................................................................. 8

    A.   The Settlement is Fair, Reasonable, and Adequate........................................... 8

      1.   Plaintiffs and Class Counsel Provided Excellent Representation.......................... 9

      2.   The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations. ................................................................................................. 10

      3.   The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation. ........................................................................ 11

      4.   The State of Litigation and Available Discovery Support Final Approval. ......... 12

      5.   The Settlement Terms Appropriately Balance the Merits of Plaintiffs' Claims with the Likelihood of Success Given the Attendant Risks. ................... 13

      6.   The Recovery is Within an Appropriate Range................................................... 14

      7.   The Settlement is Supported by Experienced Class Counsel and the Proposed Class Representatives................................................................... 14

      8.   The Settlement Treats Class Members Equitably Relative to Each Other .......... 14

    B.   The Court Should Finally Certify the Settlement Class............................................. 15

C.   The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process. ...................... 15

D.   Final Appointment of Class Representatives and Class Counsel ............................... 18

VIII.   CONCLUSION ............................................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................................. 11, 12

*Billittri v. Securities America, Inc.*,
   2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ............................................................ 16

*Burford v. Cargill, Inc.*,
   2012 WL 5472118 (W.D. La. Nov. 8, 2012) ............................................................... 9

*Cotter v. Checkers Drive-In Rests., Inc.*,
   2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ............................................................ 11

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .................................................................................... 8

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................. 14

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
   807 F. App'x 752 (10th Cir.) ..................................................................................... 16

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
   2019 WL 2720818 (N.D. Ga. June 3, 2019) .............................................................. 12

*In re Citrix Data Breach Litig.*,
   2021 WL 2410651 (S.D. Fla. Jun 11, 2021) .............................................................. 12

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981) ................................................................................... 13

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d (S.D. Tex. 2012) ................................................................... 9, 11, 12

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................. 8, 14

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................. 16

*O'Donnell v. Harris Cnty.*,
  2019 WL 4224040 (S.D. Tex. Sept. 5, 2019)......................................................7

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978)................................................................8, 14

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..............................................................................15

*Purdie v. Ace Cash Express, Inc.*,
  2003 WL 22976611 (N.D. Tex. Dec. 11, 2003)..............................................7

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983)..........................................................3, 7, 13

*San Antonio Hispanic Officers' Org., Inc. v. City of San Antonio*,
  188 F.R.D. 433 (W.D. Tex. 1999)...........................................................10

*Stott v. Capital Financial Services*,
  277 F.R.D. 316 (N.D. Tex. 2011)............................................................16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ..................................................................7

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..........................................10

**<u>Rules</u>**

Fed. R. Civ. P. 23.......................................................................2, 7, 15, 18

Fed. R. Civ. P. 23(a) ...............................................................................15

Fed. R. Civ. P. 23(a) and (b).......................................................................3

Fed. R. Civ. P. 23(b)...............................................................................15

Fed. R. Civ. P. 23(c)...............................................................................17

Fed. R. Civ. P. 23(c)(2)(B).............................................................3, 16, 17

Fed. R. Civ. P. 23(c)(3) ...........................................................................16

Fed. R. Civ. P. 23(e) ........................................................................................... passim

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 6, 7, 19

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................. 14, 15

Fed. R. Civ. P 23(g)(3) ............................................................................................... 10

Plaintiffs Joseph Trottier, Carmelo Pacheco, Bryce Miller, Angela Cooks, and Hector Acosta ("Plaintiffs"), by and through their undersigned Class Counsel, submit this Brief in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement , requesting final approval of this proposed class action settlement ("Settlement" or "SA") under Fed. R. Civ. P. 23(e) on the terms set forth in the Settlement Agreement.[1] Plaintiffs rely upon the Joint Declaration of Class Counsel in Support of Final Approval of Class Action Settlement ("Joint Final Approval Decl.") attached as **Exhibit 1**; the Declaration of Settlement Administrator Regarding Notice Procedures and Settlement Administration ("Kroll Decl.") attached as **Exhibit 2**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

## I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This settlement successfully resolves the claims of approximately 120,681 Class Members whose personally identifiable information ("PII") was allegedly accessed during a January 2023 Cybersecurity Event that impacted Defendant Sysco Corporation's ("Sysco" or "Defendant," and together with Plaintiffs, the "Parties") computer systems. Plaintiffs alleged that as a result of the Data Incident, their PII was acquired by and disclosed to third parties without authorization.

---

[1] The Settlement in its entirety is attached to the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 68-2). Capitalized terms shall have the same meaning as assigned to them in the Settlement.

1

The Settlement Agreement negotiated on behalf of Plaintiffs and Class Members provides significant monetary benefits to the Settlement Class through a $2,300,000.00 non-reversionary common fund from which Settlement Class Members are eligible to recover: (1) reimbursement for up to $5,000.00 of documented Out-of-Pocket Losses; (2) up to two-years of three-bureau credit monitoring with $1 million in fraud insurance; and (3) a residual *pro rata* cash payment. SA ¶¶ 2.2 - 2.6. The Settlement further provides Sysco's commitments for certain business practice changes designed to enhance data-security. *Id*. ¶ 2.8. The Settlement Fund also covers all costs of class notice and settlement administration, attorneys' fees and costs, and Class Representative Service Awards. *Id*. ¶¶ 2.1, 7.3, 7.4. This Settlement represents an excellent result for the Settlement Class. It provides them with meaningful benefits to remedy the harm they have allegedly suffered, or have yet to suffer, due to the Cybersecurity Event.

On May 9, 2025, this Court granted preliminary approval of the Settlement and conditionally certified the Class. ECF No. 69 at 2. The Court-ordered notice plan has since been successfully executed, with direct notice successfully reaching 95.1% of the Settlement Class Members. Kroll Decl. ¶ 13. The response to the Settlement has been overwhelmingly favorable, with **only two (2) Class Members opting out of the Settlement and no objections**. *See* Kroll Decl. ¶ 19; Joint Final Approval Decl. ¶ 11.

For the reasons detailed below, Plaintiffs and the Settlement Class respectfully submit that the Settlement is fair, reasonable and adequate, and meets the requirements for final approval under Rule 23 and due process under the United States Constitution.

Plaintiffs respectfully request that the Court finally approve the Settlement and enter a final judgment dismissing the case.

## II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

A. Whether the Court should finally certify the Settlement Class. The standard of review is the applicable FRCP Rule 23(a) and (b) factors.

B. Whether the Court should grant final approval of this proposed Class Action Settlement. The standard of review is the factors under FRCP Rule 23(e), and the Fifth Circuit's factors articulated in *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

C. Whether the Notice to the Class was the best notice practicable under the circumstances. The standard of review is FRCP Rule 23(c)(2)(B).

A district court's approval of a class settlement may only be overturned on appeal for abuse of discretion. *Reed,* 703 F.3d at 172.

## III. SUMMARY OF ARGUMENT

Plaintiffs negotiated a fair, reasonable, and adequate settlement that guarantees Settlement Class Members significant relief in the form of a $2,300,000 non-reversionary common fund, from which Settlement Class Members may seek substantial monetary payments. This Settlement Class meets the applicable Rule 23(a)-(b) standards for final certification. The Settlement Agreement is fair, reasonable, and adequate, and meets the Rule 23(e) and *Reed* factors for final approval. The Notice Program of direct notice to Settlement Class Members was effective, met all due process considerations and is the best notice practicable under the circumstances. There is no objection to the Settlement, and minimal requests for exclusion. The Settlement should be finally approved.

## IV.   INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for the factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval and accompanying Brief in Support (ECF Nos. 68 and 68-1) filed on April 30, 2025, and the accompanying Exhibits, including the Settlement Agreement (ECF No. 68-2). Plaintiffs also incorporate by reference Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 70), filed on July 25, 2025.

## V. SUMMARY OF SETTLEMENT TERMS

### 1. Settlement Benefits

The settlement creates a $2,300,000 non-reversionary settlement fund. SA ¶ 2.1. The Settlement Class Members are entitled to three separate forms of relief from the Settlement Fund: (1) a residual cash payment; (2) reimbursement for up to $5,000.00 of documented Out-of-Pocket Losses, and (3) up to two years of three-bureau credit monitoring with identity fraud insurance. SA ¶ 2.2-2.6. The Settlement Agreement provides for relief for a Settlement Class defined as:

> All individuals who reside in the United States to whom Sysco sent notice of the Cybersecurity Event in or around May 2023.

*Id*. ¶ 1.30. The Settlement Class consists of approximately 120,681 individuals. The Settlement Class specifically excludes: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staff, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Sysco; (3)

persons who timely and validly request exclusion from and/or opt-out of the Settlement Class. *Id*.

### 2. Monetary Relief

Reimbursement for Documented Out-of-Pocket Losses. All Settlement Class members may submit a claim for reimbursement of Documented Out-of-Pocket Losses up to $5,000 per individual. Documented Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Cybersecurity Event that were incurred between May 12, 2023, and the Claims Deadline.

Residual Cash Payment. All Settlement Class Members may also claim a cash payment of up to $599. The Residual Cash Payment may be claimed in addition to, and not in lieu of, a claim for Documented Out-of-Pocket Losses. Plaintiffs' Counsel expects the final Residual Cash Payment will be approximately $100 with the current claims rate.

Credit Monitoring Services. In addition to claims for Documented Out-of-Pocket Losses and a Residual Cash Payment, all Settlement Class Members may claim two years of three-bureau identity theft protection and credit monitoring services ("Credit Monitoring Services") under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a Claim for Documented Out-of-Pocket Losses and/or a Claim for a Residual Cash Payment under the settlement. Id. ¶ 2.6.

### 3.  Business Practice Commitments

For a period of three years following this agreement, Sysco has committed to pay for, implement, and continue certain data-security enhancements and business practices. Due to their confidential and sensitive nature, those enhancements and practices are not being publicly disclosed but have been shared with Proposed Class Counsel. SA ¶ 2.8. These important practice changes help ensure the protection of Settlement Class Members information in the future.

### 4.  Release

The release is tailored to the claims "that were or could have been asserted (whether individually or on a class-wide basis) based on, relating to, concerning or arising out of the Cybersecurity Event, alleged theft or misuse of Sysco's employees' or other individuals' PII, or the allegations, facts, or circumstances related to the Cybersecurity Event as described in the Litigation..." Id. ¶ 1.26. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Defendant and its affiliates, which relate to the Cybersecurity Event.

## VI.  LEGAL STANDARD

Plaintiffs bring this motion under Federal Rule of Civil Procedure 23(e), which states that a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members' claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).[2] These factors are consistent with the common-law criteria that preceded Rule 23. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *O'Donnell v. Harris Cnty.*, No. 16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 01-1754, 2003 WL 22976611, at *4

---

[2] Here, there are no agreements between the Parties except those set forth in, or explicitly referenced in, the SA. This is further indicia of a fair, reasonable, and adequate settlement.

(N.D. Tex. Dec. 11, 2003); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

## VII.   ARGUMENT[3]

### A.  The Settlement is Fair, Reasonable, and Adequate.

Under both Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant Plaintiffs' Motion for Final Approval of this Settlement, which provides immediate

---

[3] In addition to the arguments listed below, Plaintiffs incorporate by reference pp. 15-25 from Plaintiffs' Brief in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 68-1.

relief to approximately 120,681 Class Members allegedly affected by Defendant's data security incident. The Settlement is fair, adequate, and reasonable to the Settlement Class under all the applicable Rule 23(e) and *Reed* factors, has no opposition, and generated an overwhelmingly positive response from the Settlement Class. In fact, at the time of filing this Motion, 12,495 claims have been filed, only two Class Members submitted requests for exclusion, and zero objections were received. The positive reaction of the Settlement Class further supports that the settlement is, in fact, fair, reasonable, and adequate. Joint Final Approval Decl. ¶¶ 11, 15, and 17; *See Burford v. Cargill, Inc.*, No. 05-0282, 2012 WL 5472118, at *6 (W.D. La. Nov. 8, 2012) (approving a class settlement because "not a single class member objected to the settlement" and that "the existence of 2 opt-outs established that "the settlement process worked" while also showing there was not "dissatisfaction with the settlement."). For these reasons, and for the additional reasons Class Counsel discuss below, the Court should finally approve the Settlement.

### 1. Plaintiffs and Class Counsel Provided Excellent Representation.

Class Counsel vigorously and zealously litigated this action from its inception, using their combined vast experience in data privacy cases. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"); Joint Final Approval Decl. ¶ 15 (setting forth in part Class Counsel's experience and success in data privacy class actions); Joint Declaration of Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class

Action Settlement ("Joint Preliminary Approval Decl."), ECF No. 68-2 (same); Plaintiffs'

Motion to Appoint Interim Class Counsel under F.R.C.P. 23(g)(3) (ECF Docs. 19, 19-1,

19-2, 19-3, and 19-4) (same).

### 2. The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.

This Settlement is the result of extensive good faith, prolonged and arm's-length

negotiations between attorneys experienced in consumer class actions and claims regarding

data breaches. Joint Final Approval Decl. ¶ 4. There is no evidence of fraud or collusion,

and there are no agreements among the Settling Parties or their counsel apart from the

Settlement Agreement. *Id*. "The Court may... presume that no fraud or collusion occurred

between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy*

*Fed. Credit Union*, No. 16-1062, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

Throughout their settlement discussions, the Parties engaged in a thorough

evaluation and discussion of the relevant facts and law, and the Parties carefully considered

the risk and uncertainties of continued litigation and all other factors bearing on the merits

of settlement. Joint Final Approval Decl. ¶¶ 4-5. While Settlement was reached prior to

formal discovery, the Parties exchanged detailed informal discovery in advance of the

mediation to ensure that both sides were adequately informed in their negotiations. Thus,

"a presumption of correctness is said to attach to a class settlement reached in arms' length

negotiations between experienced, capable counsel after meaningful discovery." *San*

*Antonio Hispanic Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 461 (W.D.

Tex. 1999).

After hard-fought negotiations, including a full day of mediation facilitated by an experienced mediator and retired Article III judge, Hon. Wayne Anderson (Ret.), the Parties reached an agreement on the principal terms of the Settlement. The Parties continued to negotiate the details of the Settlement Agreement and its exhibits over the next several months. The negotiations were adversarial, but professional. The negotiations furthered the Settlement Class's interests, given the substantial relief achieved on behalf of the Settlement Class. The proposed Settlement was agreed to following adversarial arm's-length negotiations, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the litigation, and with the active involvement of the Parties. Joint Final Approval Decl. ¶¶ 4-5

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually agreeable settlement is strengthened." *In re Heartland*, 851 F. Supp. 2d at 1064; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 19-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular

present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 17-1035, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. Pursuing nationwide claims and relief presented complex issues of law and fact. These facts support that continued litigation would be time-consuming and expensive, and weigh in favor of final approval to allow meaningful monetary relief to be distributed to eligible class members.

### 4. The State of Litigation and Available Discovery Support Final Approval.

The next factor involves whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *see also In re Heartland*, 851 F. Supp. 2d at 1064 (S.D. Tex. 2012) (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

There is no dispute that a Data Incident occurred and that certain types of unencrypted sensitive Personal Information were accessed and exfiltrated. The evaluation and discussion of the relevant facts and law addressed the critical factors relating to the sensitivity of the type of data, the class size, and the extent of exfiltration of the data. Joint Preliminary Approval Decl. ¶ 9. This information provided a sufficient basis for a well-

reasoned assessment of the value of the Settlement, particularly where Class Counsel has litigated and resolved the same legal issues in state and federal courts throughout the country and can identify the strengths and weaknesses of the claims and defenses presented in this case. *Id*.

### 5. The Settlement Terms Appropriately Balance the Merits of Plaintiffs' Claims with the Likelihood of Success Given the Attendant Risks.

While Class Counsel believes Plaintiffs have a strong case on the merits, Defendant has a similarly strong belief to the contrary. Though it is undisputed that the data incident occurred, Defendant strongly disputes that its conduct fell below any standard or that the incident contributed to any class wide harm or damages. Coupling Defendant's view with the complexities discussed above results in a number of controversial factual and legal issues involved in this litigation, affecting standing, class certification, liability, causation, and damages. A settlement that avoids both these uncertainties, as well as the delay and expense of further litigation, is warranted. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages). *See also Reed*, 703 F.2d at 172 (settlement avoids "the delay and expense" of trial).

Accordingly, this factor also supports approval of the Settlement.

### 6. The Recovery is Within an Appropriate Range.

Even with the litigation risks described above, the proposed Settlement meets and exceeds other data incident settlements with comparable class sizes. *See* Joint Final Approval Decl. ¶ 8. This factor also supports final approval of the Settlement.

### 7. The Settlement is Supported by Experienced Class Counsel and the Proposed Class Representatives.

Class Counsel has extensive experience with similar data security incident class actions and fully endorses the Settlement. *Id.* at ¶ 15. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference"). Moreover, Class Representatives equally support the Settlement. *Id.* ¶ 17.

### 8. The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided a notice plan designed to reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. *See* SA ¶¶ 3.2, 3.3, 3.4. It also informed Class Members of their right to object to, or opt out of, the Settlement. *See id.* ¶ 1.19, 1.21. Every Class Member who submitted a valid claim and who attested that the Data Incident impacted him or her is eligible to receive a *pro rata* cash payment and two (2) years of three-bureau credit monitoring, and those who have suffered out-of-pocket losses are eligible to receive

damages up to $5,000. *Id.* ¶¶ 2.1-2.6. The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

**B.  The Court Should Finally Certify the Settlement Class.**

Settlement classes are routinely certified in consumer data breach cases. This case is no different. When it preliminarily approved the Settlement, this Court already found that it likely would certify the Settlement Class. *See* ECF No. 69 at 2.

By all measures, the Settlement Class meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class members' claims, the Court should finally certify the Settlement Class for settlement purposes. Since preliminary approval, nothing has changed the factual predicate relative to the Rule 23(a) and pertinent Rule 23(b) factors that would disrupt the Court's previous analysis; therefore, Plaintiffs request that the Court finalize its decision, for the reasons set forth in the Plaintiffs' Unopposed Preliminary Approval Motion and Supporting Brief. *See generally* ECF Nos. 68 and 68-1.

**C.  The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.**

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the

class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response."

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Notice is the gold standard and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 09-1568, 10-1833-, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom.*

*Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here and its execution satisfied all the requirements of Rule 23(c). Commencing on June 9, 2025, Kroll mailed notice directly to 120,657 Settlement Class Members. Kroll Decl. ¶ 9. On that same day, Kroll also emailed Notice to the 111,024 email addresses on file for Settlement Class Members *Id*. ¶ 10. The Short Notice and Email Notice provided an overview of the settlement terms, the monetary benefits available, the options available to Class Members, and the Settlement Website and tool-free number where additional settlement information could be obtained. SA Exs. B and C. After all remailings, Kroll opines that notice likely reached 114,732 of the 120,657 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 95.1%.. Kroll Decl. ¶ 13. Based upon the direct mailings alone (and not including the email notices), notice here goes well beyond the 70% notice threshold that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. *Id*.

In addition to the direct mail and email notice, Kroll established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. Kroll Decl. ¶ 6. Kroll established a toll-free telephone number where Settlement Class Members could call an interactive voice response (IVR) system and obtain additional

information regarding the Settlement. *Id.* ¶ 7. As of September 1, 2025, the IVR system has received 1,376 calls, and thirty-three (33) callers were connected to a live operator. *Id.*

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines. There are no objections or only two opt out requests to the Settlement. Kroll Decl. ¶ 19; Joint Final Approval Decl. ¶ 11.

In addition to the lack of objection and minimal opt-outs, the Settlement Class signaled strong support for the Settlement by the claim's activity. As of September 2, 2025, Kroll has received 7,271 Claim Forms through the mail and 5,224 Claim Forms filed electronically through the Settlement Website, for a total of 12,495 claims, representing a current claims rate of 10.36%. Kroll Decl. ¶ 15. 10.36% is a high claims rate at both this stage of the claims process and for comparable data breach settlements overall, where claims rates are typically in the 2% to 3% range. Kroll Decl. ¶ 16.

The Class's strong support of the Settlement indicates that it is fair, reasonable, and adequate, warranting final approval.

### D.  Final Appointment of Class Representatives and Class Counsel

Plaintiffs should be finally appointed Representative Plaintiffs. They have represented the Settlement Class with no conflict of interest or antagonism between themselves and other members of the class. They allege that their PII, like the PII of the Settlement Class Members, has been impacted in the same Cybersecurity Event, and, as a

result, Plaintiffs have the same interests as the Settlement Class Members. Moreover, Plaintiffs have capably represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Class Counsel, and answering Class Counsel's many questions. Finally, Plaintiffs have now brought to the cusp of final approval a Settlement that will provide, immediate, meaningful benefits to this Settlement Class of over 120,000 members.

Similarly, Plaintiffs request final appointment of Gary M Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group as Class Counsel. Class Counsel has capably navigated the treacherous waters of complex data breach litigation and achieved a first-rate result for the Settlement Class. The strength of this Settlement is self-evident from the high claims rate, minimal opt-outs, and complete absence of any opposition.

## VIII.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and entering final judgement.  Plaintiffs further request that the Court grant Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, previously filed on July 25, 2025 (ECF No. 70).

Date: September 25, 2025                    Respectfully Submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Email: gklinger@milberg.com

*/s/ Patrick A. Barthle II*
Patrick A. Barthle II
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin St.
7th Floor
Tampa, FL 33602
Tel: 813-229-4023
Email: pbarthle@forthepeople.com

***Class Counsel and Counsel for Plaintiffs***

## CERTIFICATE OF CONFERENCE

I, Gary M. Klinger, Interim Co-Lead Class Counsel and Counsel for Plaintiffs,

hereby aver pursuant to Judge Hanks's Procedures Section 6(C), that I have conferred

with the Defendant about the relief sought in this motion, and Defendant agreed not to

oppose the relief sought.

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Email: gklinger@milberg.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2025, I electronically filed the foregoing with the Clerk of the Court of the above-captioned court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Email: gklinger@milberg.com

21